UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN M. LONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 15-1236-JDT-egb |
| | ) | |
| HENRY COUNTY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DISMISSING CASE,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On September 21, 2015, Plaintiff Brian M. Long, who is incarcerated at the Henry County Corrections Facility (Jail) in Paris, Tennessee filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) After Long submitted the required documentation (ECF Nos. 5 & 7), the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 8.) The Clerk shall record the Defendants as Henry County; the City of Paris;[1] Henry County Sheriff Monte Belew; Patrolman Derrick Greenhill; Henry County Metro Crime Unit Patrolman Jamie Myrick; Officer

---

[1] The allegations against the Henry County Sheriff's Department are construed as claims against Henry County, and the allegations against the Paris Police Department are construed as allegations against the City of Paris.

First Name Unknown (FNU) Brewer; General Sessions Judge Vicki Snyder; Assistant Public Defender Jeff Fagan; and Amy Davis.

Due to Long's attempt to write in legal-sounding language, his complaint is somewhat difficult to decipher. However, he alleges that on or about July 25 or 26, 2015, unidentified law enforcement officers from the Henry County Sheriff's Department (HCSD) and the Paris Police Department (PPD) executed a search warrant or warrants at a residence located on Highway 77 and also at a second residence located at 525 Rison Street, both in Paris, Tennessee. (ECF No. 1 at 1.) The warrants allegedly were based on "illegal, informant information" that Long had "housed, stored, and possessed" three stolen firearms. (*Id*.) Long states that he did not reside at either location and was not present at either location when the search warrants were executed. (*Id.* at 2.) Long alleges the searches revealed no illegal activity at either residence. (*Id.*) He contends the officers' actions were based on stereotyping and profiling and caused damage to his reputation. (*Id.*)

Long alleges the law enforcement officers did not leave a copy of any warrant at either residence, so he telephoned the HCSD and the PPD to ask what they had been looking for and to find out if he had any active warrants; he allegedly was told by both agencies that there were no active warrants for his arrest. (*Id.* at 3.) However, Long alleges that as he was walking down the street the next day he was stopped by Patrolman Derrick Greenhill, who searched him and then arrested him for possession of firearms and possession of stolen firearms. (*Id.*) He contends the charges were false and that he did not have "any possession of such criminal act" at either residence. (*Id.*)

Long also alleges that the next morning, after he was processed at the HCSD, he was taken to see Defendant Belew, who read him his *Miranda* rights. (*Id.* at 4.) After Long waived his rights

and requested representation by Belew's ex-wife, who apparently already represented Long in another matter, Belew allegedly "blew up" with attitude and unprofessional behavior. (*Id.*)

On July 29, 2015, Long was arraigned on the charges in General Sessions Court by Judge Vicki Snyder; he was represented by an attorney, Chad Cox. (*Id.* at 5.) Long alleges that his bond, which Snyder initially had set at $100,000, was reduced to $50,000 after Snyder learned HCSD deputies had falsely stated that Long was on probation or parole at the time of his arrest. (*Id.*) In a set of confusing allegations, Long then states that as he was being processed out on bond, Sheriff Belew telephoned him and told him not to waste his money by posting bond but to stay in jail because the charges were going to be dismissed in a few days. (*Id.*) However, Long asserts that he felt he was being "bribed" and felt that his life was being threatened, so he posted bond and left. (*Id.* at 5-6.) Long follows with a description of a telephone conversation with his attorney, who allegedly told Long to stay low and out of the way because "they gone be out to get you." (*Id.* at 6.) On October 22, 2015, Long filed exhibits showing that charges for theft of property and for carrying or possession of a weapon were dismissed on August 11, 2015, and expunged on September 29, 2015. (ECF No. 9.)

On November 2, 2015, Long filed an amendment as of right to the original complaint. (ECF No. 13-1.) However, the allegations in that document are not entirely clear. Long appears to allege that Defendant Snyder wrongfully signed the two search warrants that were executed in July 2015. (*Id.* at 1.) The assertion that signing the warrants was wrongful seems to be based on the allegation that Snyder, before setting his initial bond at $100,000, should have attempted to

verify the information provided by the HCSD and/or PPD that Long was on probation or parole at the time of his arrest and that her failure to do so constituted a lie. (*Id.* at 1, 2.)

Long also filed two supplemental complaints on November 2, 2015. (ECF No. 11-1 & 14-1.) Leave to file those two supplements is GRANTED. One of the supplemental complaints alleges that on September 6, 2015, Long and his fiancée, Charneal J. Capps, were driving in her vehicle on Highway 18 when they were stopped and pulled over by Defendant Jamie Myrick. (ECF No. 11-1 at 1.) Myrick accused Long, who was behind the wheel, of driving on a suspended license. (*Id.* at 2.) Long alleges that Myrick forcefully pulled him out of the vehicle and handcuffed him. (*Id.*) Capps tried to show Myrick a text message Long had received from the Tennessee Department of Motor Vehicles stating that Long's driver's license had been reinstated the day before after he paid the reinstatement fee. (*Id.*) However, Myrick allegedly would not look at the text message and stated that he believed his dispatcher over Long and his fiancée or any cell phone. (*Id.*)

When Myrick asked for consent to search the vehicle, Capps refused and told him she needed to get home to their children, who would be alone after getting off the school bus. (*Id.* at 3.) However, Defendant Myrick allegedly stated he was just going to search the area where Long had been seated. (*Id.*) Capps reiterated that she did not agree to the search. (*Id.*) Defendant Myrick then called for a K-9 drug dog, which was brought to the scene by Defendant Belew. (*Id.*) However, the dog did not find any drugs inside the vehicle. (*Id.*) After Long was placed in the back of a patrol car, Defendant Officer Brewer allegedly searched Capps's person and found controlled substances. (*Id.* at 3-4.) Long states that he took full responsibility for the substances that were found on Capps, and all charges against her were later dismissed. (*Id.* at 4.)

Nevertheless, Capps allegedly lost her vehicle, was laid off from her job, and lost her home due to the accusations against her. (*Id.* at 5.)

In the second supplemental complaint filed on November 2, 2015 (ECF No. 14-1), Long alleges that on September 22, 2015, he entered a guilty plea to charges based on the controlled substances found during the search of Ms. Capps. (*Id.* at 1, 4.) However, he states that he entered the guilty plea only because his appointed attorney, Defendant Fagan, advised that charges would be brought back against Capps and her bond revoked if he refused the plea offer and asked for different counsel and a preliminary hearing. (*Id.* at 1-2.) Long alleges this amounted to bribery, blackmail, and entrapment. (*Id.* at 2.) He contends these allegations caused both him and Capps mental distress, especially Capps who was pregnant with triplets at the time. (*Id.*)

On November 4, 2015, Long filed yet another supplemental complaint purportedly on behalf of himself and seventeen other inmates at the Jail, all of whom signed the document. (ECF No. 15.) He alleges that Amy Davis, who is described as Sheriff Belew's secretary, personal assistant, or mail carrier, has failed to send inmates' outgoing mail and deliver inmates' incoming mail, including legal mail, in a timely manner. (*Id.* at 2, 4.) Long alleges that legal documents have been delayed, tampered with or misplaced. (*Id.*) He also appears to allege that the problems with his own mail delivery at the Jail are occurring because there is a "conflict of interest" in this case. (*Id.* at 4.)

To the extent Long seeks to add seventeen additional plaintiffs to this case, leave to file the supplemental complaint is DENIED. Each new prisoner plaintiff would be liable for a share of the filing fee, but none of them submitted either a motion to proceed *in forma pauperis* or a trust

account statement pursuant to the PLRA. However, Long's claims regarding his own mail will be allowed, and he is GRANTED leave to file that portion of the supplement complaint.

The types of relief sought in Long's various pleadings include compensatory damages and several different forms of injunctive relief. He also seeks compensation for Ms. Capps.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of

providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v.*

*Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Long filed his complaint under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

First, to the extent Long complains that Ms. Capps's constitutional rights were violated and seeks relief on her behalf, he cannot raise those claims. Twenty-eight U.S.C. § 1654 provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ." Thus, a litigant in federal court must act either *pro se* or through counsel. A non-lawyer such as Long may not represent another non-lawyer in connection with a matter pending in federal court. In addition, in most circumstances a cause of action under 42 U.S.C. § 1983 "is

8

a personal action cognizable only by the party whose civil rights ha[ve] been violated." *Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984); *see also Cole v. Robertson Cnty. Sheriff's Dep't*, No.3:18-cv-0497, 2018 WL 3328075, at *2-*3 (M.D. Tenn. July 6, 2018) (holding that although "an individual typically cannot bring suit under § 1983 based on violations of a third person's constitutional rights," Tennessee law permitted the *pro se* plaintiff to bring a §1983 suit on behalf of his deceased son's estate).

With regard to his own claims, Long does not assert a valid claim against either Henry County or the City of Paris. When a § 1983 claim is made against a county or municipality, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the county or municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The second issue is dispositive of Long's claims against Henry County and the City of Paris.

A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not

received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g., Fowler v. Campbell*, Civil Action No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); *cf. Raub v. Corr. Med. Servs., Inc.*, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Cleary v. Cnty. of Macomb*, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The complaint does not allege that Long suffered any injury arising from an unconstitutional policy or custom of either Henry County or the City of Paris.

The complaint also does not state a valid claim for violation of Long's Fourth Amendment right to be free from illegal searches. Search warrants may be issued only on a showing of probable cause. U.S. Const. amend. IV; *see also Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). An officer may rely on a judicial determination of probable cause unless the officer "knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989). The complaint alleges that the July 2015 search warrants for the two residences were invalid because they were based on "illegal" information received from an informant that Long was in possession of three stolen firearms. (ECF No. 1 at 1.) However, Long does not allege that any of the named individual Defendants *knew* that information was false or misleading yet still presented it to the judge in support of the warrant requests. He also does not allege that any of the named Defendants participated in the search of either residence or that either search was conducted in an unreasonable manner. In fact, Long alleges that he was not present when the warrants were executed and that the searches turned up no evidence that he was engaged in any illegal activity. Therefore, he has not sufficiently alleged that the searches violated his Fourth Amendment rights.

The complaint also does not state a valid claim for false arrest. A Fourth Amendment claim for false arrest requires an arrest without probable cause. *See, e.g.*, *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) ("Today it is well established that an arrest without probable cause violates the Fourth Amendment."). Probable cause exists where "'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett*, 316 F.3d at 580 (quoting *Mich. v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see*

11

*also Wolfe v. Perry*, 412 F.3d 707, 717 (6th Cir. 2005) ("probable cause necessary to justify an arrest is defined as 'whether at that moment [of the arrest] the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense'" (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (alterations in original))); *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). That an arrest does not result in a conviction does not necessarily mean that the arrest itself was unlawful. Because the relevant inquiry concerns the information available to the officer at the time of the arrest, "[a] valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988); *see also Baker*, 443 U.S. at 145 ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted — indeed, for every suspect released.").

With regard to his July 2015 arrest on theft and firearms charges, Long states he was stopped and arrested while walking down the street. While he alleges that the HCSD and the PPD had given him the *impression* there were no active warrants for his arrest, (ECF No. 1 at 3), Long does not allege that there actually was no active arrest warrant or that the arresting officer, Defendant Greenhill, knew the charges were based on false information. Therefore, Long has not sufficiently alleged there was no probable cause for his July 2015 arrest.

To the extent Long complains of the initial traffic stop by Myrick on September 6, 2015, he does not allege that Myrick did not have a reasonable suspicion or probable cause to believe that Long was driving on a suspended license. He alleges only that Myrick refused to listen when he and Capps tried to explain that his license had just been reinstated. In addition, after controlled

substances were found on Capps and Long took responsibility for those substances, there was probable cause for his arrest.

In order to succeed on a malicious prosecution claim Long must show the following: "First, . . . that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, . . . that there was a lack of probable cause for the criminal prosecution. Third, . . . that, as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty . . . . Fourth, the criminal proceeding must have been resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (citations, internal quotation marks and brackets omitted).

With regard to Long's prosecution for theft and firearms charges, he does not sufficiently allege that any of the named Defendants "made, influenced, or participated" in the decision to bring those charges against him. While Long was being processed at the HCSD, Defendant Belew allegedly read Long his *Miranda* rights, then got upset when Long asked for Belew's ex-wife to represent him. (ECF No. 1 at 4.) After Long's arraignment, Belew allegedly tried to convince Long not to post bond because the charges were going to be dismissed in a few days. (*Id.* at 5-6.) Those allegations, without more, do not state a plausible claim for malicious prosecution against Defendant Belew.

Any malicious prosecution claim based on Long's prosecution and conviction on the drug charge arising out of the September 2015 traffic stop is barred by *Heck v. Humphrey*, in which the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination,

13

> or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. 477, 486-87 (1994)(footnotes omitted). *See also Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995) (same) (footnotes omitted). Long has no cause of action under § 1983 if the claims in that action hinge on factual proof that would call into question the validity of a state court order directing his confinement unless and until any prosecution is terminated in his favor, his conviction is set aside, or the confinement is declared illegal. *Heck*, 512 U.S. at 481-82; *Schilling*, 58 F.3d at 1086. *Cf. Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (whenever the relief sought is release from prison, the only remedy is through a habeas petition, not a § 1983 complaint). In this case, *Heck* applies to bar Long's claims arising from his criminal prosecution. Long entered a plea of guilty to the drug charge, and he does not allege that the conviction has been overturned, set aside, or declared illegal.

Long also does not have a § 1983 claim against his attorney, Defendant Fagan, arising out of Fagan's representation of Long in the criminal proceeding. Attorneys, whether court appointed or privately retained, do not act under color of state law for purposes of § 1983 or under color of federal law for purposes of *Bivens*. *Smith v. Hilltop Basic Res., Inc.*, 99 F. App'x 644, 646 (6th Cir. 2004); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003) ("Here, the defendant attorneys did not act under color of state law as privately retained attorneys, although the acts alleged related to state court litigation."); *Otworth v. Vaderploeg*, 61

14

F. App'x 163, 165 (6th Cir. 2003) ("A lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983."); *Pagani-Gallego v. Escobedo*, No. 97-1640, 1998 WL 381562, at *1 (6th Cir. 1998) (court-appointed attorney representing criminal defendant in federal court does not act under color of federal law for *Bivens* purposes); *Haley v. Walker*, 751 F.2d 284, 285 (8th Cir. 1984) (per curiam) (same); *see also Polk Cnty. v. Dodson*, 454 U.S. 312 (1981) (public defender does not act under color of state law for purposes of § 1983).

Nor does Long have a valid § 1983 claims against Defendant Snyder. It is well settled that judges, in the performance of their judicial functions, are absolutely immune from civil liability. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Bright v. Gallia Cnty., Ohio,* 753 F.3d 639, 648-49 (6th Cir. 2014); *Leech v. DeWeese,* 689 F.3d 538, 542 (6th Cir. 2012). Whether a judge or other official is entitled to absolute immunity in a given case turns on a "functional" analysis. *Harlow v. Fitzgerald*, 457 U.S. 800, 810-11 (1982). The "touchstone" for applicability of absolute judicial immunity is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993). Long alleges that Defendant Snyder signed search warrants that were based on false information, although he does not allege that she was aware of that falsity. Long also alleges that Snyder should have verified officers' statement that he was on probation or parole at the time of the July 2015 arrest before setting his initial bond at $100,000. Issuing search warrants and setting bond are within the scope of judicial function; therefore, Long's claims against Defendant Snyder are barred by judicial immunity.

Long's allegation that Defendant Amy Davis tampered with, delayed and/or misplaced his mail can be construed as a claim of retaliation for exercising his First Amendment right to file this

action. "Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (same); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (same).

In this case, Long has not sufficiently alleged that there is a causal connection between his filing of this action and the various problems with sending and receiving his mail at the Jail. His belief that there is such a connection is purely speculative, as he states only that he "personally feel[s]" there may be a "conflict of interest" because of this case. (ECF No. 15 at 4.) Long does not allege that Defendant Davis ever made any comments about this lawsuit or threatened him with adverse action because of it. Therefore, Long has not stated a claim for retaliation.

Long's claims regarding his mail could also be construed as a First Amendment claim of denial of access to the courts. The Supreme Court has held that "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating

> capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Thaddeus-X*, 175 F.3d 378, 391 ( 6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

In order to establish a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. at 351-53). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Although Long alleges that his legal mail was delayed and/or tampered with, he has not alleged that those mail problems caused him to miss any court deadline or caused any court to dismiss a claim that otherwise had merit. Therefore, Long has not stated a claim for denial of access to the courts.

For all of the foregoing reasons, the complaint, the amended complaint, and all of the supplemental complaints are subject to dismissal in their entirety for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of

17

course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

In conclusion, Long's complaint is DISMISSED for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b(1). Leave to amend is DENIED.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Long in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Long would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Long nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. §§ 1915(a)-(b). Therefore, Long is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Long, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE